IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALEXA SPRIGGS<br>8757 Georgia Avenue, Suite 400<br>Silver Spring, Maryland 20910<br><br>IAN BEATTIE<br>8757 Georgia Avenue, Suite 400<br>Silver Spring, Maryland 20910<br><br>     Plaintiffs,<br><br>v.<br><br>GEORGE MERLING<br>100 Beall Street, Suite 217<br>Cumberland, MD 21502<br><br>and<br><br>ALLEGANY MEDICAL MARIJUANA<br>DISPENSARY, LLC<br>100 Beall Street<br>Cumberland, MD 21502<br>     *Serve Resident Agent:*<br>     Regina Hamm<br>     16210 McMullen Hwy<br>     Cumberland, MD 21502<br><br>     Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*  Case No.:  1:20-cv-3395<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## COMPLAINT

Plaintiffs Alexa Spriggs ("Spriggs") and Ian Beattie ("Beattie", together "Plaintiffs"), by and through undersigned counsel, hereby bring this Complaint against Defendants George Merling ("Merling") and Allegany Medical Marijuana Dispensary, LLC ("Allegany Medical", together "Defendants'). Plaintiffs bring claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"); the Maryland Wage and Hour Law, MD. CODE ANN., LAB & EMPL. § 3-401, *et seq*. ("MWHL"); the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMPL. § 3-501, *et seq*. ("MWPCL"); claims for wrongful termination and tortious interference under Maryland common law; and a claim for declaratory judgment pursuant to 28 U.S.C. § 2201.

**Parties and Jurisdiction**

1. Plaintiffs are adult residents of Maryland.

2. Allegany Medical is a limited liability company formed under the laws of the Maryland with its principal place of business in Cumberland, Maryland. Its principal business is the operation of a medical marijuana dispensary.

3. Merling is an adult resident of Allegany County, Maryland.

4. During the period relevant to this action (approximately December 1, 2017 through May 25, 2019, hereafter "the relevant period"), Defendants qualified as employers within the meaning of the FLSA, MWHL, and MWPCL.

5. During the relevant period, Allegany Medical had gross revenues, sales, and/or receipts exceeding $500,000.00; sold products and goods that passed in interstate commerce; and Allegany Medical otherwise qualified as an "enterprise engaged in commerce" under the FLSA.

6. During the relevant period, Allegany Medical employed at least two or more employees who were engaged in commerce, and who produce goods for commerce, or handled, sold, or otherwise worked on goods or materials that have moved in or were produced for commerce as a single enterprise under the FLSA.

7. There are employees who, like Plaintiffs, use tools, equipment, electronics, and software that crossed interstate lines.

8. There are employees who, like Plaintiffs, regularly use wire and electronic means of communicating interstate, sell good and products that have moved in interstate commerce, and who regularly process credit card transactions through an interstate credit card system for customer payments.

9. There are employees who use, in Defendants' facility, cleaning products, tools, signage, among other items, that have moved in interstate commerce.

10. Accordingly, subject matter jurisdiction exists because the Plaintiffs were employed by Defendants, a covered entity, satisfying the enterprise coverage provisions under the FLSA.

11. For the reasons listed above, Defendants also satisfy the coverage provisions of the MWHL and MWPCL.

12. As a covered enterprise, Allegany Medical has at all material times been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.

13. At all relevant times, Merling was an owner of Allegany Medical.

14. At all relevant times, Merling owned was in control of the day-to-day operations of Allegany Medical.

15. At all relevant times, Merling had complete operational control of Allegany Medical. Merling maintains custody and control of Allegany Medical's business records, such as payroll records, and is responsible for maintaining these records.

16. At all relevant times, Merling was, and continued to be, aware of operational issues throughout the facility, and is knowledgeable of Allegany Medical's past and present employment practices and policies.

17. Merling was ultimately responsible for hiring and managing Plaintiffs.

18. At all relevant times, Merling possessed, and continues to possess, the authority and discretion to fix, adjust, and determine hours worked and amounts paid with respect to employees at Allegany Medical, including Plaintiffs, and possessed the ability to hire and terminate employees.

19. Merling received and continues to receive income from Allegany Medical, and has been enriched by the failure to properly pay workers, including Plaintiffs.

20. At all relevant times, Merling was an "employer" within the meaning of the FLSA,

MWHL, and MWPCL. Merling is jointly and individually liable with Allegany Medical for damages to Plaintiffs under the FLSA, MWHL, and MWPCL.

21. As set forth below, Plaintiffs seeks unpaid overtime wages in amounts to be determined based on the evidence, as well as liquidated damages, statutory damages, and attorney's fees pursuant to the FLSA, MWHL, and MWPCL.

22. Plaintiffs were hourly employees, and not exempt from the overtime provisions of the FLSA and MWHL.

23. By acting as the named Plaintiffs, Plaintiffs do hereby affirm their consent to participate in this FLSA action.

24. This Court has subject matter jurisdiction over this action pursuant to 29. U.S.C. § 206-207 and 28 U.S.C. § 1331.

25. This court has supplemental jurisdiction over the MWHL and MWPCL claims pursuant to 28 U.S.C. § 1367(a) because the claims are so related to the FLSA claim that they form part of the same case or controversy.

26. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants do business within this judicial district and the events giving rise to these claims occurred in this judicial district.

**Facts of Plaintiffs' Claims**

27. Throughout the relevant period, Plaintiffs worked for Defendants in various roles, including "Budtender", "Floor Supervisor", and "Budtender Supervisor" at Defendants' facility in Cumberland, Maryland.

28. All positions Plaintiffs held for Defendants were paid at an hourly rate.

29. Defendants employed Plaintiff Spriggs from approximately October 15, 2017 through approximately March 21st, 2019. Merling was responsible for hiring Spriggs.

30. Defendants employed Plaintiff Beattie from approximately October 31, 2017 through approximately May 25, 2019.

31. From their date of hire until January 1, 2019, Defendants scheduled Plaintiffs to work a split schedule of 52 hours one week, and 37 the next. This equates to an average of 44.5 hours per week.

32. Plaintiffs were not paid the overtime premium ("time-and-a-half", or 1.5x their regular rate) for the hours they worked in excess of 40 per week.

33. Plaintiffs also worked a substantial amount of time "off the clock", for which Defendants paid them nothing whatsoever.

34. Until about January 2, 2019, Plaintiffs worked an average of one hour of overtime per day, or 5 hours per week, for which they received no compensation whatsoever.

35. After about January 2, 2019, the amount of uncompensated time reduced to about 1.5 hours per week.

36. From approximately November 15, 2017 through about February 28, 2018, Defendants paid Spriggs $16.00 per hour.

37. From approximately March 1, 2018 through about January 1, 2019, Defendants paid Spriggs $20.00 per hour.

38. From January 2, 2019 until her termination on about March 21, 2019, Defendants paid Spriggs $23.00 per hour.

39. From approximately December 1, 2017 through January 31, 2018, Defendants paid Beattie $16.00 per hour.

40. From approximately February 1, 2018 through about September 30, 2018, Defendants paid Beattie $20.00 per hour.

41. From approximately October 1, 2018 through February 28, 2019, Defendants paid

5

Beattie $21.00 per hour.

42. From approximately March 1, 2019 through May 25, 2019 Defendants paid Beattie $17.00 per hour.

43. Defendants' failure to pay Plaintiffs the wages they rightfully earned as required by the FLSA, MWHL, and MWPCL was willful and intentional, and not in good faith, as evinced by the complete failure to compensate Plaintiffs for portion of their work hours, and the failure to pay overtime despite being scheduled to work well in excess of 40 hours per week every other week.

44. Throughout her employment, Spriggs suffered sexist comments from Merling, such as "as a woman, you need to man up and put your guy face on because women aren't taken seriously" and "stop smiling so much."

45. Spriggs was also subjected to constant racist remarks from Merling and other managers throughout her employment with Defendants.  For example, Greg Pappas, a supervisor of Spriggs, told her she "can dress casually on Fridays, but not in corn rows" (referring to a traditionally African-American hairstyle.  Spriggs' white colleagues were not subjected to any sort of limitation on hairstyle.  At a staff meeting, Pappas told Spriggs that her brother, an African-American male who was a patient at the time, likely did not have a valid medical reason to be a patient despite having a certification from a physician because he was probably a "drug seeker like the others."

46. During a meeting on March 21, 2019, Merling accused Spriggs of being untrustworthy, saying "how can I trust you if I can search your name on case search and find members of your family charged with drugs and other crimes?".  At a separate staff

47. Spriggs protested and told Merling that she was being targeted because of her race.

48. At the conclusion of the meeting, Defendants fired Spriggs.

49. The abusive remarks described above and her termination were racial and sexual discrimination. Additionally, Spriggs' termination was retaliation for protesting discrimination. These actions were in violation of 42 U.S.C. § 1981 and Maryland common law.

50. After her termination, Spriggs began applying and interviewing for new employment opportunities.

51. Shortly after her termination, Defendants began contacting Spriggs' potential employers with the intention of causing those employers to cease dealing with Spriggs.

52. Defendants, during the spring of 2019, told those potential employers that Spriggs was bound by a non-compete agreement that was, in fact, unenforceable.

## **CAUSES OF ACTION**

### **COUNT I**
**Violation of Federal Fair Labor Standards Act**
**(Overtime)**
*All Plaintiffs v. All Defendants*

53. Plaintiffs re-allege and re-assert each and every allegation set forth above as if each were set forth herein.

54. The FLSA mandates that an employer must pay an employee overtime wages in the amount of one-and-one-half times (1.5x) the employee's regular rate of pay for all hours worked each week in excess of forty (40) ("overtime hours").

55. At all times, Plaintiffs were Defendants' "employees" covered by § 207(a)(1) of the FLSA, and Defendants were Plaintiffs' "employers" under § 207(a)(2) of the FLSA.

56. Defendants, as Plaintiffs' employers, were obligated to compensate Plaintiffs at the overtime rate of one-and-one-half times (1.5x) Plaintiffs' regular rate for all overtime hours Plaintiffs worked.

57. As set forth above, Defendants had knowledge and suffered or permitted Plaintiffs

to work many overtime hours throughout their employment. Merling had ultimate authority to set Plaintiffs' work schedule and rates of pay.

58. As set forth above, Defendants failed and refused to pay Plaintiffs one-and-one-half (1.5x) their regular rate for all overtime hours they worked.

59. Defendants' failure and refusal to pay Plaintiffs as required by the FLSA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable to Plaintiffs under Count I for all unpaid wages in an amount to be proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT II
### Violation of Maryland Wage and Hour Law
### (Overtime)
*All Plaintiffs v. All Defendants*

60. Plaintiffs re-allege and re-assert each and every allegation set forth above as if each were set forth herein.

61. Plaintiffs were Defendants' "employees" and Defendants were Plaintiffs' "employers" within the meaning of the MWHL. As Plaintiffs' "employers," Defendants were obligated to pay Plaintiffs overtime compensation under § 3-415 and § 3-420 of the MWHL. These sections require Defendants to compensate Plaintiffs at the rate of one-and-one-half times (1.5x) their regular hourly rate ("overtime rate") for all hours worked per week in excess of forty (40) ("overtime hours").

62. As set forth above, Defendants failed and refused to pay Plaintiffs one-and-one-half (1.5x) their regular rate for all overtime hours they worked. Merling had the ultimate decision-making ability with respect to this issue.

63. As described above, Merling had the ultimate authority to set Plaintiffs' schedules.

At all relevant times, Defendants had knowledge that Plaintiffs worked, on average, more than forty (40) hours per week.  Alternatively, Defendants suffered or permitted Plaintiffs to work, on average, more than forty (40) hours per week.

64. Defendants, as Plaintiffs' "employers," were obligated to compensate Plaintiffs at their overtime rate for all the overtime hours Plaintiffs worked in each week.

65. As discussed supra, Defendants had actual or constructive knowledge of all hours Plaintiffs worked, including overtime hours.  Nevertheless, Defendants willingly and knowingly failed to pay Plaintiffs for their overtime hours at the overtime rate as required under the MWHL.

WHEREFORE, Defendants are liable to Plaintiffs under Count II for all unpaid wages in such amounts as will be proven at trial, plus an equal amount as liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT III
### Violation of Maryland Wage Payment and Collection Law
### (Unpaid Wages)
*All Plaintiffs v. All Defendants*

66. Plaintiffs re-allege and re-assert each and every allegation set forth above as if each were set forth herein.

67. Plaintiffs were Defendants' "employees" pursuant to § 3-501 and § 3-502 of the MWPCL.

68. Defendants were Plaintiffs' "employers" pursuant to § 3-501 and § 3-502 of the MWPCL.

69. As Plaintiffs' "employers," Defendants were obligated to pay Plaintiffs all wages due for the work they performed, including overtime wages.

70. Defendants' failure and refusal to pay overtime wages due to Plaintiffs was not the result of any bona fide dispute.  Merling had the ultimate authority to decide whether to pay

9

Plaintiffs.

WHEREFORE, Defendants are liable to Plaintiffs under Count III for three times (3x) the amount of all unpaid wages that Defendants failed to pay Plaintiffs, for attorney's fees, costs, and expenses of this action incurred as a result of Defendants' failure to pay Plaintiffs what was legally owed to them, and for such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems proper.

## COUNT IV
## Violation of 42 U.S.C. § 1981
## (Race/Color Discrimination)
*Plaintiff Spriggs v. All Defendants*

71. Plaintiff Spriggs realleges and reincorporates by reference the prior paragraphs as if fully set forth herein.

72. As described above, Spriggs was subjected to discrimination based on her race and/or color when, *inter alia*, Defendants criticized her hair style, investigated her family member's alleged criminal background, and made racist comments about same.

73. Spriggs' white colleagues were not subjected to the same targeted treatment regarding their hair or alleged family members' criminal histories.

74. Spriggs reported discrimination on the basis of her race and/or color to Defendants, and was terminated.

75. Spriggs' termination was discrimination based on her race and/or color, or retaliation for reporting discriminatory practices.

76. Defendants' discrimination against Spriggs on the basis of her race and/or color was willful, malicious, egregious, and/or done with reckless disregard for Spriggs' civil rights.

WHEREFORE, as a result of Defendants' race discrimination, Spriggs seeks economic damages and compensatory damages for pain, suffering, emotional anguish and damage to her reputation in an amount to be proven at trial; punitive damages in an amount to be proven at trial;

and reimbursement for attorneys' fees, interest, and costs associated with pursuing this matter, to be determined at the conclusion of this litigation.

## COUNT V
### Discrimination in Violation of Maryland Common Law
### (Race, Color, and/or Sex Discrimination)
*Plaintiff Spriggs v. All Defendants*

77. Plaintiff Spriggs realleges and reincorporates by reference the prior paragraphs as if fully set forth herein.

78. It is a longstanding rule of law in Maryland that an employer is liable for the tort of wrongful discharge where an employee is terminated in violation of a clearly defined public policy. *Adler v. American Standard Corp.*, 291 Md. 31, 42, 432 A.2d 464, 470-471 (1981).

79. It is also a longstanding rule of law and public policy in Maryland that employers with less than 15 employees may not discriminate against an employee on the basis of her gender and retaliate against her for protesting unlawful discrimination. Md. Gov't Code §§ 20-601, et seq.; *Molesworth v. Brandon*, 341 Md. 621, 637 (1996).

80. Defendant Allegany Medical, at all relevant times, was an employer in the State of Maryland with fewer than 15 employees.

81. Throughout her employment, Spriggs suffered verbal harassment from Defendants based on her race, color, and/or sex, as describe above.

82. This included, *inter alia*, statements from managers telling her that "as a woman, you need to man up and put your guy face on because women aren't taken seriously" and to "stop smiling so much."

83. Spriggs' male and white colleagues were not subjected to the same discriminatory harassment.

84. Spriggs reported the discrimination based on her race, sex, and/or color, and was terminated from employment as a result.

85. Defendants' discrimination against Spriggs on the basis of her race and/or color was willful, malicious, egregious, and/or done with reckless disregard for Spriggs' civil rights.

WHEREFORE, as a result of Defendants' race discrimination, Spriggs seeks economic damages and compensatory damages for pain, suffering, emotional anguish and damage to her reputation in an amount to be proven at trial; punitive damages in an amount to be proven at trial; and reimbursement for attorneys' fees, interest, and costs associated with pursuing this matter, to be determined at the conclusion of this litigation.

## COUNT VI
### Tortious Interference with Prospective Advantage
*(Spriggs v. All Defendants)*

85. Plaintiff Spriggs realleges and reincorporates by reference the prior paragraphs as if fully set forth herein.

86. As set forth above, Defendants wrongfully interfered with Spriggs' potential employment opportunities by communicating with her potential employers and telling them that she was bound by a non-compete agreement.

87. The non-compete agreement was, in fact, unenforceable.

88. Defendants' conduct in communicating with these potential employers was intentional, willful, and calculated to cause damages to Spriggs' lawful efforts to seek new employment. Defendants' conduct was perpetrated with the intentional and improper purpose of causing damage and was without justifiable cause.

89. As a result of Defendants' tortious conduct, the potential employers that Defendants contacted ceased negotiating with Spriggs and did not hire her.

90. As result of Defendants' tortious conduct, Spriggs has suffered and will continue to suffer lost profits, other consequential damages, and harm to reputation.

WHEREFORE, Plaintiff Alexa Spriggs seeks economic damages and compensatory

damages for pain, suffering, emotional anguish and damage to her reputation in an amount to be proven at trial; punitive damages in an amount to be proven at trial, with interest and costs associated with pursuing this matter, to be determined at the conclusion of this litigation.

## COUNT VII
### Declaratory Judgment

*(Plaintiff Alexa Spriggs v. Defendant Allegany Medical Marijuana Dispensary)*

91.     Plaintiff Spriggs brings an action for declaratory judgment against Defendant Allegany Medical Marijuana Dispensary pursuant to 28 U.S.C. § 2201, *et seq*., for the purpose of determining a question of actual controversy between the parties.

92.     The parties executed a document titled "Non-Compete Agreement" on or about November 15, 2017.

93.     Paragraph 1 of the document forbids Spriggs from:

Directly or indirectly engag[ing] in any business with the following competitor(s):
- Competitors, to include dispensaries, or any parent company, withing District 1 in the State of Maryland
- District 1 includes Garrett County, Maryland; Allegany County, Maryland and into Washington County, Maryland, just before Hagerstown, Maryland.

Specifically, engaging in sales activity or patient management to attract and retain medical marijuana dispensary patients in District 1 in the State of Maryland.
Directly or indirectly engaging in any competitive business includes, but is not limited to: (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly or indirectly in any such business, or (iv) soliciting any customer of Allegany Medical Marijuana Dispensary for the benefit of a third party that is engaged in such business, ALEXA SPRIGGS agrees that this non-compete agreement will not adversely affect ALEXA SPRIGGS livelihood.

94.     The document contained a term of 24 months from the date of Spriggs' separation from Defendant Allegany Medical Marijuana Dispensary.

95.     Spriggs maintains that the terms of the Non-Compete Agreement are unenforceable under Maryland law as overbroad in temporal and geographical scope.

96.     Allegany Medical Marijuana Dispensary maintains that the Non-Compete

Agreement is enforceable.

97. Therefore, there exists an actual controversy of a practicable issue between Spriggs and Allegany Medical Marijuana Dispensary within the jurisdiction of this Court involving the rights and liabilities of the parties under a contract, which controversy may be determined by a judgment of this Court.

98. Antagonistic claims are present between the parties. These claims indicate inevitable litigation.

99. A declaratory judgment by this Court will terminate this controversy.

WHEREFORE, Plaintiff demands:

1. That this Court determine and adjudicate the rights and liabilities of the parties with respect to the Non-Compete Agreement.

2. That this Court find and declare that the Non-Compete Agreement is unenforceable, and Spriggs is under no obligation to abide by any of its terms.

3. That this Court award Spriggs the costs of these proceedings, and such other and further relief as she may be entitled to receive.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,

**ZIPIN, AMSTER & GREENBERG, LLC**


By: */s/ Roy Lyford-Pike*
    Roy Lyford-Pike, Esq. No. 19836
    Philip B. Zipin, Esq., No. 03932
    8757 Georgia Ave., Suite 400
    Silver Spring, Maryland 20910
    Phone:   (301) 587 - 9373
    Fax:       (240) 839 – 9142
    rlpike@zagfirm.com
    pzipin@zagfirm.com

*Counsel for Plaintiffs*