IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALEXA SPRIGGS, et al, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Case No.: 1:20-cv-3395 |
| | * | |
| GEORGE MERLING, et al. | * | |
| | * | |
| Defendants. | * | |

**************************************************************************

## DEFENDANTS' RESPONSE TO
## PLAINTIFFS' ATTORNEY FEE PETITION

Defendants George Merling and Allegany Medical Marijuana Dispensary, LLC ("Defendants"), by and through their attorneys, Jason C. Buckel, T. Lee Beeman, Jr., and Buckel, Levasseur, Pillai & Beeman, LLC, hereby file response to Plaintiffs' petition for attorney fees and in support thereof, state the following:

1. Plaintiffs filed the underlying Complaint in this matter on or about July 21, 2019, alleging seven counts against Defendants, including violations of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* (hereinafter "FLSA"), the Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq.* (hereinafter "MWHL"), and Maryland Wage Payment and Collection Law (hereinafter "MWPCL").  Significantly, Plaintiffs also alleged violations 42 U.S.C. § 1981 on the basis of racial discrimination, violation of Maryland Common Law on the basis of gender and racial discrimination, tortious interference with prospective advantage, and declaratory judgment.

2. Defendants contested all aspect of Plaintiffs claims for damages, including the wage and hour violations as well as the allegations of racial and gender discrimination against

Plaintiff Spriggs and that Defendants' tortiously interfered with Plaintiff Spriggs' prospective advantages.

3. Defendants asserted that Plaintiffs were properly classified as exempt employees under the administrative exemption and that they were not entitled to overtime pay for hours allegedly worked in excess of forty (40) hours per week and even that Plaintiffs worked over forty(40) hours per week.

4. Through discovery, the parties litigated the issues of Defendants' alleged wage and hour violations, Defendants alleged racial discrimination toward Plaintiff Spriggs, Defendants' alleged gender discrimination toward Plaintiff Spriggs, Plaintiff Spriggs' termination, Plaintiff Spriggs' alleged damages following her termination, Plaintiff Spriggs' failure to mitigate her alleged damages following her termination, Plaintiff Spriggs' non-compete agreement, and Defendants' allegedly tortious conduct to interfere with Spriggs' future employment.

5. Plaintiffs submitted their Attorney Fee Petition claiming $44,212.50 in attorney's fees and $2,083.60 in costs, for a total of $46,296.10 claimed owing.

## ARGUMENT

In matters such as the present, where Plaintiffs have filed claims based uon different facts and legal theories, and the plaintiff has prevailed on only some of those claims, "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). Thus, the Court stated, the district courts must attempt to arrive at a reasonable fee award by identifying specific hours that should be eliminated or by reducing the award to account for the plaintiff's limited success. *Id.* at 437.

The Supreme Court has "established a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague,* 505 U.S. 557,562 (1992); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986). The resulting lodestar figure may be adjusted upward or downward in light of what has become known as the *Johnson* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Rum Creek Coal Sales, Inc.,* 31, F.3d at 175 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974); *Hensley,* 461 U.S. at 430 n. 3).

    1.    <u>The time and labor required</u>.

Significantly, throughout Plaintiff's Petition for Attorney's Fees and Costs, counsel for Plaintiff omits mention of claims raised in their original complaint with respect to both alleged sexual and racial discrimination against Plaintiff Alexa Spriggs. These claims perhaps represented the most significant risks of liability to the Defendants in this matter, and frankly were a much more substantial source of regulatory and reputational concern than the largely technical and fairly *de minimis* violations of statutory wage an hour regulations. Defendants suggest that the reason for the almost total omission of the discussion of these claims in the Petition is that, in fact, there was zero probative evidence produced to support such claims, and that in fact the claims were specifically withdrawn and excluded from any elements of the settlement, thereby obviating any claim that the Plaintiffs (prevailed on the merits) with respect to those claims.

Despite the omission of any discussion of those claims and the reality that Defendants in fact "prevailed" with respect to those asserted bases of liability, the time entries submitted by Plaintiff's counsel in support of their attorney's fees request do not appear in any way to remove time expended by Mr. Lyford-Pike (or by Mr. Zipin) in pursuit of the failed sexual and racial discrimination claims. Mr. Zipin has submitted a declaration to the contrary, stating that he has "removed" any time entries which in his opinion did not relate to the wage an hour claims. Such a declaration, however, absent other means to verify the time entries and the time amounts spent in fruitless pursuit of the abandoned claims, are unavailing and impossible for the Court to premise an award for attorney's fees upon.

In point of fact, the time entries reveal that there appears to be no material deduction for many of Mr. Lyford-Pike's time entries for portions of work which clearly were allocated in pursuit of sustaining the abandoned claims herein. Most notably, Plaintiff's claim in their submitted time records that Mr. Lyford-Pike spent nine (9) hours on September 14, 2022 preparing for and defending the depositions of Plaintiffs. The actual depositions of Plaintiffs took approximately six hours hours, well within the nine (9) hour preparation and defense time entry. Notably, the deposition of Plaintiff Alexa Spriggs, in particular, included extensive questioning as to the basis for her racial and gender discrimination claims which were subsequently abandoned. Plaintiff Alexa Spriggs' deposition lasted approximately, three hours, with at least one third and nearly one half of the deposition focusing on the topics of alleged racial discrimination, alleged gender discrimination, Spriggs' termination, Spriggs alleged damages following her termination, Spriggs failure to mitigate her alleged damages following her termination, Spriggs non-compete agreement, and Defendants' allegedly tortious conduct to interfere with Spriggs' future employment. Similarly, Mr. Lyford-Pike billed (5.5) hours to "prepare for and take deposition of

corporate designee". During this deposition, Sharon Merling, Defendants' corporate designee, was questioned expansively regarding alleged racial discrimination, alleged gender discrimination, Spriggs' termination, Spriggs alleged damages following her termination, Spriggs failure to mitigate her alleged damages following her termination, Spriggs non-compete agreement, and Defendants' allegedly tortious conduct to interfere with Spriggs' future employment. Mr. Lyford Pike's questioning of the corporate designee on the above-referenced topics covered at least one-third of the deposition, if not a greater period.

Additionally, Mr. Lyford-Pike's entries as verified in Plaintiff's submission in support of attorney's fees do not seem in any way to discount the fact the Spriggs sexual or racial discrimination claims were the subject of much of the written discovery in this case. On September 12, 2022, Plaintiff's submissions suggest that Mr. Lyford-Pike spent Four point Nine (4.9) hours "preparing Plaintiff's response to written discovery… revise and edit same…confer with clients re: same…prepare correspondence re: same… and send draft responses to opposing counsel". Included among these written discovery responses were numerous areas of inquiry including Ms. Spriggs claim that she was sexually and racially discriminated against by the Defendants, claims which she completely abandoned and cannot be said in anyway to have been prevailed upon there merits. By way of example, Plaintiff Alexa Spriggs propounded fifteen interrogatories; nine of Spriggs' interrogatories directly related to Counts IV – VII of the Complaint (the abandoned claims), without relating in any manner to Counts I-III. Of the Requests for Production of Documents responded to by Plaintiff Spriggs, more than half were strictly related to the abandoned claims.

      The Court must significantly reduce the fee request in recognition of these simple facts.

Plaintiffs' time entries, and Mr. Zipin's declaration related thereto, appear to offer absolutely no analysis or explanation of a division of time entries for the moderately successful wage and hour claims as opposed to the completely unsuccessful discrimination, tortious interference, or declaratory judgment claims.

The time records submitted by Plaintiff's counsel reveals one obvious fact: until the time of preparation for the settlement conference, no attorneys with the Zipin firm performed hardly any work in connection with this matter other than Mr. Lyford-Pike. Mr. Zipin himself appears to have billed less than one (1) hour of attorney time in connection with this matter prior to September 2022. While there are exhibits and information contained in the declaration and supporting exhibits as to Mr. Zipin's abilities and justifications for fees in this matter, there is literally nothing regarding Mr. Lyford-Pike, other than that he formally worked for the firm and he performed essentially all of the litigation work connected with this matter up to the time of the parties settlement conference with the court.

The court clearly is aware of the nature and alleged "complexity" of both this litigation and of the settlement conference conducted herein. Defendants would submit, quite frankly, that the matter was not terribly complicated, particularly once the sexual and racial discrimination claims were abandoned by Plaintiffs. Under the Johnson factors adopted by the Fourth Circuit in *Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169*(4th Circuit)(1994), Defendants would submit that the time and labor required to achieve the result for Plaintiffs in this case is dramatically overestimated by Plaintiff's counsel in their fee petition, and that in fact a significant amount of the time and labor accrued by the senior attorney on the case billing an hourly amount in excess of the local statutory guidelines was in fact incurred during and after the settlement conference itself and not during some "hotly contested" period of litigation. A careful review of the time

records submitted would suggest that Mr. Zipin, himself spent zero point eight (0.8) hours working on this matter prior to September 22, 2022. Between the date of that September 22 time entry and the settlement conference conducted one (1) month later on October 26, Mr. Zipin (and essentially the entirety of the Zipin Firm) expended Seven point Eight (7.8) hours of work in this matter (again without any breakdown as to how much time they had expended with respect to the Spriggs claim for sexual or racial discrimination). From the inception of the settlement conference on October 26, through the submission of the fee petition, Mr. Zipin conversely claims to have expended Twenty-Two point Five (22.5) hours to participate in a settlement conference which Defense Counsel's perception, was not particularly complex nor dealt with particularly large sums of money, and to work through the process of effectuating formal settlement of this relatively standardized claim and prepare his own fee petition and supporting documents. While recognizing that the fee petition and related satellite litigation can be part of the ultimate attorney's fees award, it strains credulity to suggest that of the One hundred thirty-three point five (133.5) hours allegedly expended by the Zipin Firm in this claimed "complex" litigation (which grossed but Forty-Five Thousand ($45,000.00) dollars in settlement value for two clients, a sum in defense counsel's experience well below many small or moderate sized auto tort cases in the State of Maryland) nearly twenty percent (20%) of the time expended was for settlement, post-settlement, and fee petition activities. Put simply, when counsel spends more time preparing their own fee petitions than substantively litigating a relatively minor case, perhaps the full award of a fee petition only invites more vexatious litigation and dilatory litigation tactics.

    Defendants would suggest that the questions presented in this litigation were neither novel nor difficult. Essentially, they boiled down to a straight forward interpretation as to whether or not Ms. Spriggs and Mr. Beatie had contractually agreed to be non-exempt employees for a period of

7

their service with the company or not, based upon various documents signed by the parties and the testimony of Ms. Spriggs and Mr. Beatie themselves. This was not a class-action. This was not a highly technical matter involving highly skilled or highly compensated employees. It was a run of the mill dispute as to the calculation of overtime hours for a limited period of time, the type of case which Defendants would suggest that Plaintiff's counsel avers it handles on a daily basis.

As to the level of skill required under the Johnson factors, Defendant's would never suggest that the Zipin Firm is not a skilled and knowledgeable practitioner in the field of FLSA litigation. In point of fact, however, we would suggest that such a recognition perhaps mitigates against the substantial fee request in this case. This matter was, in short, a simple matter about two employees at a small business in Western Maryland who had a dispute after leaving their employment about their status as exempt or non-exempt employees from receiving overtime for essentially several months of their employment. The dispute was elevated by the fact the one of the Plaintiffs brought forth allegations of racial and gender discrimination, that would have had significant regulatory and reputational effects on both the business and its principals. Those allegations were completely withdrawn and lacked any probative evidence. The wage and hour violations themselves, and settlement thereof, were essentially *de minimums* and the Zipin Firm most assuredly did not need One Hundred Thirty-Three (133) hours of attorney and paralegal work at the literal top of the scale for attorney reimbursement under local guidelines for these types of cases, in order to achieve a Forty-Five Thousand ($45,000.00) Dollar gross aggregate settlement of both Plaintiffs' claims.

3.  <u>The level of skill required to perform the legal service properly</u>.

Here, Plaintiffs argue to the Court that Skill is a heavily weighted factor in the federal courts' lodestar analysis "because experience and reputation are a mirror image of skill." *Peacock v. Bank of America Corp.,* 133 F. Supp. 2d 1322, 1327 (M.D. Fla. 2000). They further argue that the

Firm ". . . executed the litigation of Plaintiffs' case with organized efficiency, including having the case managed almost exclusively by Senior[1] Associate Roy Lyford-Pike."  In framing their argument, Plaintiffs' Counsel attempts to convince the court that "Such knowledge, skill, and experience were absolutely necessary in navigating this case to a successful outcome for Plaintiffs," on the one hand, but also that the firm "executed the litigation with organized efficiency," by utilizing one of the least senior attorneys in the firm.

    4.    <u>The preclusion of other employment due to acceptance of the case</u>.

Plaintiffs correctly note that the firm, and even Mr. Lyford-Pike, were able to pursue other matters despite the acceptance of this matter.

    5.    <u>The Customary Fee</u> and <u>the amount involved and the results obtained</u>.

Plaintiffs concede in their Petition that the rate recommended under Appendix B(3)(e) is Four Hundred Seventy-Five ($475.00) Dollars per hour for attorneys with up to Twenty (20) years of practice. The Plaintiffs' Fee Petition should be limited the Four Hundred Seventy-Five ($475.00) Dollar cap, if not reduced, at a per hour basis in this matter. While Defendants do not contest that Mr. Zipin is an experienced and successful litigator in this field in the relevant geographic area, there is absolutely nothing in the record of this case to suggest that the work he expended—less than an hour of substantive litigation, coupled with over twenty (20) hours of participating in a straightforward settlement conference and then preparing standardized post-settlement documents and the subject fee petition, require or justify the significant hourly fee which lies outside the Court's recommendations for allowable fees for matters of this nature. Once

---

[1] While Plaintiffs' Counsel titles Mr. Lyford-Pike as a "Senior Associate" it is worthwhile to note that the Firm's website is entirely devoid of any "Associates" and that all attorneys of the Firm who have not reached partnership are titled "Senior Associate."

again, this is not a complex or ground breaking case, and even were the court to find that the underlying was complex, Mr. Zipin's role in this matter was routine.

The hourly rate for Mr. Lyford-Pike is billed at $300.00 per hour. Plaintiffs' counsel indicated that Mr. Lyford Pike was admitted to practice in 2015. This matter was instituted in 2019, when Mr. Lyford Pike had only four years of practice. Hours billed during years 2019 and 2020 should be billed in the Appendix B(3)(a). Even once Mr. Lyford-Pike achieved five (5) years of practice, the Firm bills Mr. Lyford-Pike at the top of the bracket contained in Appendix B(3)(b). Mr. Lyford-Pike's hourly rate for hours expended should be reduced.

Plaintiffs' counsel seeks reimbursement of an expense in the amount of $350.00 to Precise Reporting Services, Inc. for the Deposition of George Merling. In the early morning hours on the day of the deposition of George Merling's scheduled deposition, Mr. Lyford-Pike e-mailed Defendants' counsel indicating his desire to cancel Mr. Merling's deposition. The charge they seek reimbursement for is presumably a late cancellation fee for the deposition due to the fact that the deposition was not canceled until 1:30 a.m. when set to begin at 9:00 a.m. the next day. Defendants should hardly be liable for a fee incurred related to a deposition that Plaintiffs unilaterally chose to cancel, past the 11th hour.

The amount of fees requested, roughly Forty-Six Thousand Dollars ($46,000.00), is brought into even more sharper focus as to their propriety by the fact that the gross aggregate settlement in the case of Forty-Five Thousand Dollars ($45,000.00) is **LESS** than the amount in attorney's fee allegedly expended in securing the settlement. Plaintiff's counsel suggests that Mr. Zipin expended roughly Nineteen point Two (19.2) hours post settlement in this case, for which wants reimbursement at Five Hundred Twenty-Five Dollars ($525.00) per hour. There was obviously no extraordinary skill, nor any particular benefit to his clients in the expenditure of

substantially more time post-settlement than during the course of the actual litigation itself. The result obtained here – a Twenty Thousand Dollar ($20,000.00) settlement for one Plaintiff and a Twenty-Five Thousand Dollar ($25,000.00) settlement for the other Plaintiff – can not be said to be substantial in any way. Ms. Spriggs' claims and the Plaintiffs' Fee Petition estimates that her overtime claims would have amounted to approximately Fourteen Thousand Dollars ($14,000.00), independent of the multiplying factors that make these types of cases apparently so attractive to firms such as Plaintiffs' counsels. Ms. Spriggs received Twenty Thousand Dollars ($20,000.00). Mr. Beattie claims that his overtime calculations would have amounted to Seventeen Thousand Dollars ($17,000.00). He received Twenty-Five Thousand Dollars ($25,000.00). While Defendant is a small business located in Western Maryland and only resolved this case for the settlement amounts, the payment of those settlement amounts was not a significant economic expenditure even for such a business. The court can take notice of its own experience and the experience of other jurists in the Federal District Courts of Maryland with respect to the size and nature of such settlements. Defendants would suggest only that it is a miscarriage of justice and creates the unfortunate impression in the broader community that lawyers are simply in the business for their own benefit, and not for the benefit of their clients nor broader societal goals, to impose an attorney's fee that equals roughly One Hundred percent (100%) of the settlement amounts of a run of the mill wage and hour overtime action, which was only accelerated and resisted for the most part because of the unfounded and extremely damaging allegations made by one of the Plaintiffs as to racial and gender discrimination, claims that were wholly abandoned by Plaintiffs with respect to the settlement.

  10. <u>The undesirability of the case</u>.

Plaintiffs' counsel laughably claims that this case was undesirable due to the "inability of Plaintiffs to pay attorney fees and costs." Plaintiffs' counsel also claims that the Firm has represented "hundreds, if not thousands of FLSA claimants in Federal and State Courts." Clearly, Plaintiffs' counsel's Firm has developed a model of pursuing fee shifting contingency claims, despite their undesirable nature.

## **CONCLUSION**

Defendants request this Court:

1. Reduce the legal fees claimed owing by Plaintiffs based upon necessary adjustments to Roy Lyford-Pike's rate;,

2. Reduce the legal fees claimed owing by Plaintiffs based upon necessary adjustments to Phil Zipin's rate;

3. Reduce the legal fees claimed owing by Plaintiffs based upon necessary adjustments for work performed in furtherance of claims which were unrelated and unsuccessful;

4. Reduce the costs claimed owing to eliminate reimbursement for non-reimbursable costs; and

5. For such other further relief as this Court deems necessary and just.

Respectfully submitted,

*/s/ T. Lee Beeman, Jr.*
Jason C. Buckel, Bar No: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington Street
Cumberland, Maryland 21502
Phone: (301) 759-3700
Fax:    (301) 982-9450
lbeeman@blpblaw.com
blplaw@atlanticbbn.net

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of January, 2023, a true and correct copy of the foregoing was served by electronic mail on the following:

Philip B. Zipin, Esq.
pzipin@zagfirm.com

              / s /
By: T. Lee Beeman, Jr., Bar No. 19613