**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ALEXA SPRIGGS, et al,** | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Case No.: 1:20-cv-3395-JMC |
| **GEORGE MERLING, et al,** | * | |
| *Defendants*. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OPINION ADDRESSING**
**ATTORNEYS' FEES AND COSTS**

The Court has previously approved the settlement agreement reached by the parties in this wage, hour, and discrimination case. (ECF No. 43). Presently before the Court is Plaintiffs' Petition for Attorney's Fees and Costs (ECF No. 46). In addition to this Petition, the Court has considered Defendants' Response to Plaintiffs' Attorney Fee Petition (ECF No. 51) and Plaintiffs' Reply in Support of Plaintiffs' Petition for Attorney's Fees and Costs (ECF No. 52). No hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, the Court will GRANT in part and DENY in part Plaintiffs' Petition.

**I.      Legal Standard**

"A prevailing party is entitled to an award of reasonable attorney's fees and costs pursuant to the FLSA." *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 242 (4th Cir. 2010) (citing 29 U.S.C. § 216(b)). "A plaintiff is a 'prevailing party' for the purpose of attorney's fees if the plaintiff succeeds 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Matias Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 3927323, at *3 (D. Md. Aug. 20, 2019) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"The payment of attorney's fees and costs to employees who prevail on FLSA claims is mandatory." *Orellana v. ACL Cleaning LLC*, No. DKC 19-2318, 2022 WL 3586513, at *3 (D. Md. Aug. 22, 2022). "The amount of the attorney's fees, however, is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).

To calculate the award of reasonable attorneys' fees, courts in the Fourth Circuit follow a three-step procedure. "First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). A trial court may exercise its discretion in calculating the lodestar amount because it possesses a "superior understanding of the litigation, and the matter is essentially factual." *Jahn v. Tiffin Holdings, Inc.*, No. SAG-18-1782, 2020 WL 4436375, at *1 (D. Md. Aug. 3, 2020) (other citations and internal quotations omitted). In exercising its discretion, "the Court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *McAfee*, 738 F.3d at 88 (other citation omitted). The *Johnson* factors, as characterized by the Fourth Circuit in *McAfee*, include:

> (1) [T]he time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Corral v. Montgomery Cnty.*, 91 F. Supp. 3d 702, 712–13 (D. Md. 2015) (citing *McAfee*, 738 F.3d at 88, n. 5). Once the Court determines the lodestar amount, it "must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *McAfee*, 738

F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). "Finally, the court must analyze the degree of success enjoyed by the plaintiff, and determine whether the entire claimed fees amount, or some percentage of that amount, is a reasonable award." *Jahn*, 2020 WL 4436375, at *2 (other citations and internal quotations omitted).

As the Fourth Circuit's discussion in *McAfee* illustrates, courts have been less than consistent in determining whether the *Johnson* factors "inform the calculation of the lodestar," whether they instead should be used to make "upward or downward adjustments to it," or whether they should serve "both purposes." *McAfee*, 738 F.3d at 89. Without determining which, if any, approach is correct, the Fourth Circuit noted with approval that determination of the lodestar multipliers often subsumes consideration of many of the *Johnson* factors. *Id.* at 89–90. When considering the total number of hours expended, the Court generally considers factors one, two, and seven. In assessing the reasonableness of the rates charged per hour, factors three, four, five, six, nine, eleven, and twelve are potentially relevant.

## II.   Analysis

### A.  Lodestar Amount

#### 1.  Reasonable Hours

"The burden is on the prevailing party to provide time sheets sufficiently detailed to justify the hours sought." *Carranza v. Ramirez*, No. PWG 20-cv-2687, 2022 WL 4080310, at *2 (D. Md. Sep. 6, 2022) (other citation omitted). "This generally consists of an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent." *Id.* (other citation omitted). The hours presented by the petitioner "must be reasonable and represent the product of billing judgment." *Chapman v. Ourisman Chevrolet, Co.*, No. AW-08-2545, 2011 WL

2651867, at *15 (D. Md. July 1, 2011) (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)).

At the outset, the Court recognizes that Defendants take issue with what they perceive as Plaintiffs' failure to make "mention of claims raised in [Plaintiffs'] original complaint with respect to both alleged sexual and racial discrimination against Plaintiff Alexa Spriggs." (ECF No. 51 at p. 3).[1] Defendants contend that Plaintiffs were unsuccessful on such claims, thereby warranting a reduction in attorneys' fees.[2] However, the Court believes Defendants' concern is diminished for two reasons. First, Plaintiffs' counsel, Mr. Phillip Zippin, provided the Court with a declaration stating, "In exercise of my billing judgment, and in order to conform the time records to the requirements set forth in Appendix B of the Local Rules, I have deleted certain time entries . . . unrelated to the successful claims for overtime wages." (ECF No. 46-2 at p. 1; ECF No. 51 at p. 4 (Defendants acknowledge Mr. Zippin's declaration)). Second, and perhaps more important, the Court is not convinced that it should consider Plaintiff Spriggs' sexual and racial discrimination claims as "unsuccessful." In their Reply, Plaintiffs adamantly assert that these claims were "put aside" only for purposes of settlement negotiations, but Plaintiff Spriggs was prepared to pursue these claims had the parties not achieved a settlement. (ECF No. 52 at p. 3).

The parties do not direct the Court to any caselaw providing insight into the issue of successful versus unsuccessful claims. After conducting its own research, the Court has found a case that sheds some light on this issue: *Jackson v. Estelle's Place, LLC*. In *Jackson*, the parties reached a settlement agreement, and the Fourth Circuit noted, "of the 13 forms of relief sought in

---

[1] When the Court cites to a specific page number or range of page numbers of an ECF document, the court is referring to the page numbers located within the electronic filing stamps provided at the top of every ECF document.

[2] Defendants do not make clear whether they want the Court to consider this perceived issue during the Court's lodestar determination (Step 1) or the Court's consideration of unrelated and unsuccessful claims (Step 2). The Court chooses to address this issue at the outset.

the complaint, nine were not addressed in the Settlement Agreement and were wholly abandoned by Appellants." *Jackson*, 391 F. App'x at 241.  The Court attempted to find the settlement agreement in the United States District Court for the Eastern District of Virginia's electronic filing system, but the agreement has been filed under seal.  However, Defendants have not directed the Court to any language in the parties' settlement agreement representing an intent of Plaintiff Spriggs to abandon or withdraw her sexual and racial discrimination claims, nor has the Court located any such language.  Therefore, as the Court will reiterate below in step two, the Court will not reduce the hours Plaintiffs have set forth as reasonable based on Defendants' perceived failure of Plaintiff Spriggs' sexual and racial discrimination claims.

Proceeding to the actual consideration of Plaintiffs' proffered reasonable hours of work, the Court recognizes that Plaintiffs provided a breakdown of how counsel spent each of the 138.4 declared hours of work:

(a) 22.40 hours for case development, background investigation, and case administration;

(b) 8.80 hours for pleadings;

(c) 27.60 hours for interrogatories, document production, and other written discovery;

(d) 23.60 hours for depositions;

(e) 10.20 hours for motions practice;

(f)  18.90 hours for ADR; and

(g) 26.90 hours for the fee petition.[3]

(ECF No. 46 at pp. 21–22).  Regarding the breakdown of hours amongst individual lawyers and paralegals/law clerks, the hours requested are as follows:

---

[3] Although Plaintiffs' Petition requested only 22.0 hours for preparation of the Petition, Plaintiffs' Reply requests an additional 4.90 hours for the time spent writing the Reply.

(a) Roy Lyford-Pike: 83.10 hours

(b) Phillip Zippin: 31.10 hours

(c) Michael Amster: 0.30 hours

(d) Paralegals and Law Clerks: 19.00 hours.

*Id.* at p. 12.  Plaintiffs support the reasonableness of this request with a detailed billing record (ECF No. 46-1), a declaration from Plaintiffs' counsel, Mr. Zippin (ECF No. 46-2), and declarations of attorneys Jonathan Puth and Steven D. Frenkil (ECF Nos. 46-3 & 46-4).[4]

Turning to the relevant *Johnson* factors, the Court recognizes Plaintiffs' concession that no unusual time limitations were presented in this case that would warrant an adjustment of the lodestar amount pursuant to factor seven.  Therefore, to assess the reasonableness of Plaintiffs' proffered 138.4 hours of work, the Court will "analyze the time and labor expended in light of the novelty and difficulty of the questions presented and the skill required to properly perform the legal services." *Carranza*, 2022 WL 4080310, at *3 (citing *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, No. CIV.A. MGJ-95-309, 2002 WL 31777631, at *6 (D. Md. Nov. 21, 2022) (explaining that it is the trial court's duty to determine which *Johnson* factors are relevant to the determination of reasonable fees in a particular case)).  Plaintiffs filed suit on November 20, 2020 (ECF No. 1), and the Court approved the parties' settlement agreement on December 5, 2022 (ECF No. 43).  "Although the standard violations of wage and hour claims usually involve straightforward issues concerning an employer's failure to pay an employee sufficiently or timely,

---

[4] Jonathan Puth is a partner in the law firm of Correia & Puth, is admitted to practice law in the State of Maryland and the District of Columbia, focuses his legal practice almost exclusively in unemployment law, and has been practicing law since 1992.  (ECF No. 46-3 at p. 1).  Steven D. Frenkil is a principal in the law firm of Miles & Stockbridge P.C. in Baltimore, Maryland, is admitted to practice law in the State of Maryland and the District of Columbia, focuses his legal practice on employment law and education, and has been practicing law since 1978.  (ECF No. 46-4 at p.1).

a case can also have unique issues that arise out of the circumstances surrounding the controversy." *Matias Guerra*, 2019 WL 3927323, at *7.  Here, Plaintiffs had to deal with an absence of time records which added a level of complexity to an otherwise straightforward overtime wages case.[5] Despite the absence of records, Plaintiffs' counsel delegated the majority workload of this case to Senior Associate Attorney Roy Lyford-Pike until Mr. Lyford-Pike left Plaintiffs' counsel's firm in September 2022.  (ECF No. 46 at p. 7).  Although this speaks to Mr. Lyford-Pike's ability, the Court believes this delegation also indicates the lessened significance of any complexity introduced by a lack of records.  For these reasons, the Court finds Plaintiffs' requested hours reasonable with a few exceptions.

It is alarming to the Court that Plaintiffs' counsel requests 26.9 hours for the filing of its Petition and Reply.  If the Court were to accept that Plaintiffs' counsel put 26.9 hours of work into the Petition and Reply, the Court would be accepting the notion that a petition for attorneys' fees can account for 19.4% of the total work put into a case.  The Court has recently disapproved of such a notion.  *Orellana*, 2022 WL 3586513, at *3 ("It is inappropriate for nearly fifteen percent (15%) of the hours requested for the entire case to have been devoted to one attorney's work on the fee request.").  Therefore, the Court will strike all but ten (10) hours from the time Mr. Zippin billed for the Petition and Reply.  *Id.* (striking all but five (5) hours from the 13 hours put into an attorneys' fees request).

Additionally, the Court must strike the hours Plaintiffs' counsel billed for clerical work. Furthermore, the Court must strike the hours billed by Mr. Lyford-Pike for intra-office meetings he had with Mr. Zippin or Mr. Amster to the extent that Mr. Zippin or Mr. Amster also billed for those meetings.  "Clerical work is not properly billable as legal fees to one's adversary even if it

---

[5] The declarations of Mr. Puth and Frenkil attest to the complications an absence of records may bring to such a case. (ECF Nos. 46-3 at p. 2; ECF No. 46-4 at p. 3).

is performed by a paralegal or assistant." *Carranza*, 2022 WL 4080310 at *3 (other citation and internal quotations omitted).  Plaintiffs detailed billing record includes tasks properly classified as clerical, such as entries for issuing summonses and filing documents.  *See Ramirez v. 316 Charles, LLC*, No. CV SAG-1903252, 2021 WL 662185, at *3 (D. Md. Feb. 19, 2021), *appeal dismissed sub nom. Ramirez v. 9400 Snowden River, LLC*, No. 21-1216, 2021 WL 3776329 (4th Cir. Apr. 22, 2021) (citing cases discussing examples of clerical work, including scanning and mailing documents, issuing summonses, creating notebooks or files, and updating attorney's calendars); *Pfieffer v. Schmidt Baking Co.*, No. CIV. CCB-11-3307, 2014 WL 1291814, at *4 (D. Md. Mar. 28, 2014) (deducting time spent on purely administrative tasks such as electronically filing documents and preparing a package).  If a time entry contains both substantive and clerical work, the Court will reduce the billed hours by .10.  *See Ramirez*, 2021 WL 662185, at *3 (reducing the time billed by .10 hours where a clerical task was "subsumed within a larger billing entry, e.g., reviewing and editing a motion, and then filing the motion).  Regarding the double-billed intra-office meetings, Guideline 2(d) in Appendix B states that "only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer."  The Court's adjustments to Plaintiffs' counsel's claimed hours, excluding the adjustment to the hours Mr. Zippin spent on the Petition and Reply, are as follows:

| DATE | TIMEKEEPER/ DESCRIPTION | RATE/ HOUR | PROPOSED HOURS | ADJUSTED HOURS | SERVICES TYPE |
|---|---|---|---|---|---|
| 7/19/2019 | Caitlin Banez<br><br>Created Clio matter, binder, and file. All docs. Scanned into drive. | $150.00 | .70 | 0.0 | Case Development |
| 8/2/2019 | Roy Lyford-Pike | 300.0 | .80 | .70 | Case Development |

| | Finalize demand letter and send to clients for review | | | | |
|---|---|---|---|---|---|
| 8/27/2019 | Roy Lyford-Pike<br><br>Revise and edit demand letter per IB's changes; send to clients for final approval | 300.00 | .70 | .60 | Case Development |
| 9/19/2019 | Roy Lyford-Pike<br><br>Review and revise demand letter; mail to same to Defendants; prepare corr. to clients re: update on status | $300.00 | .50 | .40 | Case Development |
| 11/18/2019 | Roy Lyford-Pike<br><br>Conf.  w/ PZ re: status of case and response to demand letter | $300.00 | .30 | 0.0 | Case Development |
| 1/17/2020 | Roy Lyford-Pike<br><br>Conf. w/ MA re: litigation strategy | $300.00 | .3 | 0.0 | Pleadings |
| 2/11/2020 | Roy Lyford-Pike<br><br>Revise and edit complaint; send to clients for review | $300.00 | 2.10 | 2.00 | Pleadings |
| 8/5/2020 | Roy Lyford-Pike<br><br>File review: review all pleadings, orders, deadlines, and calendar | $300.00 | .20 | .10 | Interrogatories |
| 8/5/2020 | Roy Lyford-Pike<br><br>TC w/ PZ re: status of matter | $300.00 | .20 | 0.0 | Interrogatories |
| 11/20/2020 | Roy Lyford-Pike | $300.00 | 1.10 | .7 | Pleadings |

| | | | | | |
|---|---|---|---|---|---|
| | Final edits to Complaint; open new case on CM/ECF; prepare civil cover sheet and summons for each defendant; file same; prepare follow up corr. to clients re: same | | | | |
| 11/20/2020 | Roy Lyford-Pike<br><br>Conf. w/ PZ re: status of case and implications of judge's order granting partial motion to dismiss | $300.00 | .30 | 0.0 | Motions Practice |
| 12/4/2020 | Roy Lyford-Pike<br><br>Re-file affidavit of service | $300.00 | .30 | 0.0 | Pleadings |
| 1/5/2021 | Roy Lyford Pike<br><br>Access Order and Answer to Complaint for RLP on ECF site. Download and file. Email RLP re: same | $300.00 | .20 | .10 | Pleadings |
| 1/5/2021 | Roy Lyford-Pike<br><br>Prepare Plaintiffs' status report; revise and edit same; file same | $300.00 | .70 | .60 | Motions Practice |
| 1/21/2021 | Roy Lyford-Pike<br><br>Review scheduling order, update calendar and tasks | $300.00 | .40 | .30 | Motions Practice |
| 5/18/2021 | Roy Lyford-Pike<br><br>Review file; prepare written | $300.00 | 3.20 | 3.10 | Interrogatories |

| | discovery requests; revise and edit same; send same to OC and ask for depo dates | | | | |
|---|---|---|---|---|---|
| 5/19/2021 | David Vidal-Irizarry<br><br>Send out Spriggs interrogs to OC | $150.00 | .20 | 0.0 | Interrogatories |
| 7/6/2021 | Roy Lyford-Pike<br><br>Review file; prepare joint motion for extension of scheduling order and proposed order; revise and edit same; send to OC for review | $300. 00 | 1.20 | 1.00 | Motions Practice |
| 8/17/2021 | Roy Lyford-Pike<br><br>Review order granting motion to extend schedule; update calendar and tasks; review file | $300.00 | .20 | 0.0 | Motions Practice |
| 9/22/2021 | Roy Lyford-Pike<br><br>Review paperless order from judge; update calendar and tasks; prepare corr. To client IB re: update on status | $300.00 | .30 | .10 | Motions Practice |
| 10/23/2021 | Roy Lyford-Pike<br><br>Review file; prepare draft JSR, joint motion to extend, and proposed order; send to OC for review | $300.00 | 1.10 | .90 | Motions Practice |

| 10/27/2021 | Roy Lyford-Pike<br><br>Review D's edits to JSR; revise and edit same and joint motion to extend deadlines; file same | $300.00 | .50 | .40 | Motions Practice |
|---|---|---|---|---|---|
| 10/28/2021 | Roy Lyford-Pike<br><br>Review new scheduling order from court; update calendar and tasks | $300.00 | .20 | 0.0 | Motions Practice |
| 11/17/2021 | Roy Lyford-Pike<br><br>Review file; update calendar and tasks | $300.00 | .10 | 0.0 | Case Development |
| 1/12/2022 | Roy Lyford Pike<br><br>Review corrs. From Judge Coulson's chambers re: mediation; respond to same; update calendar and tasks | $300.00 | .20 | .10 | ADR |
| 1/29/2022 | Roy Lyford Pike<br><br>Review file; Update calendar and tasks with deposition dates to hold | $300.00 | .20 | .10 | Depositions |
| 2/3/2022 | Roy Lyford Pike<br><br>Revise and edit JSR and motion to extend discovery; prepare proposed order, revise and edit same; review all and file | $300.00 | .40 | .30 | Motions Practice |
| 2/9/2022 | Roy Lyford Pike | $300.00 | .10 | 0.0 | Case Development |

| | | | | | |
|---|---|---|---|---|---|
| | Review file; update calendar and tasks | | | | |
| 3/8/2022 | Roy Lyford Pike<br><br>Review file, tc w/ OC re: scheduling depositions; update calendar and tasks | $300.00 | .30 | .20 | Depositions |
| 4/22/2022 | Roy Lyford Pike<br><br>Prepare joint motion to continue scheduling conference; revise and edit same; file same | $300.00 | .30 | .20 | Motions Practice |
| 7/8/2022 | Roy Lyford Pike<br><br>Review file; prepare deposition notices of Merling and corporate designee, send same to OC | $300.00 | .50 | .40 | Depositions |
| 8/5/2022 | Roy Lyford Pike<br><br>Review file; review scheduling order; prepare notices of depositions and send same to OC | $300.00 | .50 | .40 | Depositions |
| 8/15/2022 | Roy Lyford Pike<br><br>Review file; update calendar and tasks | $300.00 | .20 | .10 | Depositions |
| 9/12/2022 | Roy Lyford Pike<br><br>Prepare Plaintiff's responses to written discovery; revise and edit same; confs. w/ clients re: same; prepare corr. to clients re: same; | $300.00 | 4.90 | 4.80 | Interrogatories |

| | send draft responses to OC | | | | |
|---|---|---|---|---|---|
| | | | | | |

**TOTAL REDUCTIONS PER PERSON/POSITION:**
- Roy Lyford-Pike: 4.90 hours
- Paralegals/Law Clerks: 0.90 hours

The total reasonably billed hours for this case, categorized by individual/position, is as follows:

(a) Roy Lyford-Pike: 78.20 hours

(b) Phillip Zippin: 14.20 hours[6]

(c) Michael Amster: 0.30 hours

(d) Paralegals and Law Clerks: 18.10 hours

(e) **Total Reasonable Hours: 110.80 hours**

Therefore, the Court determines that, for the purposes of its lodestar calculation, Plaintiffs' counsel reasonably billed for a total of 110.80 hours.

## 2. Reasonable Hourly Rates

The fee applicant must "establish the reasonableness of a requested rate." *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (other citation omitted). In addition to the attorney's own affidavits, "the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award . . . ."

---

[6] This figure is based upon the Court's 16.90-hour reduction regarding Mr. Zippin's work on the Petition and Reply.

*Orellana*, 2022 WL 3586513, at *2 (other citation omitted).  Such specific evidence should include, for example, "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community."  *Id.* (other citation omitted).  The Court's Local Rules provide non-binding guidelines regarding reasonable hourly rates that vary depending on how long an attorney has been admitted to the bar.  Those rates are as follow: $150–225 for lawyers admitted to the bar less than five years; $165–300 for lawyers admitted for five to eight years; $225–350 for lawyers admitted for nine to fourteen years; $275–425 for lawyers admitted for fifteen to nineteen years; and $300–475 for lawyers admitted for twenty years or more.  The rate for paralegals and law clerks is $95–150.

The Court is concerned with three aspects of Plaintiffs' counsel's requested hourly rates: (1) Mr. Zippin requests an hourly rate above the guidelines' rates, (2) little evidence is offered regarding the skill and credentials of Mr. Lyford-Pike or Mr. Amster, and (3) the Petition does not account for the fact that Mr. Lyford-Pike was barred for as little as four years when he began working on this case and as much as much as eight years when he finished working on this case. The Court will first address its concern regarding Mr. Zippin's requested hourly rate.

Enhancements above the guidelines' rates "should be applied sparingly and in exceptional cases."  *Carranza*, 2022 WL 4080310, at *4 (other citation and internal quotations omitted).  The declaration of Mr. Puth states that "[t]he rates requested by Plaintiffs in this case are . . . within the market rates for employment litigation in the Baltimore-Washington Metropolitan area."  (ECF No. 46-3 at p. 3).  Mr. Frenkil's declaration states practically the same.  *See* (ECF No. 46-4 at p. 3).  However, despite recognizing counsel's customary rates as a *Johnson* factor in determining reasonable hourly rates, "customary rates are not dispositive . . . and indeed, the Appendix B rates are more representative of a broader range of fees charged by practitioners appearing in federal

court in Maryland." *Carranza*, 2022 WL 4080310, at *5 (other citations and internal quotations omitted).  Furthermore, "the fact that the Appendix B rates were set eight years ago does not automatically mean they no longer reflect market rates[.]"  *Id.*  "This Court has continued to apply these rates through 2021[]" and 2022.  *See, e.g.*, *id.*

The Court recognizes the exceptional experience and skill level of Plaintiffs' counsel—especially Mr. Zippin—but this recognition does not warrant an enhancement of fees above the guidelines.  Although the lack of records introduced some complexity in this case, such a lack of records is by no means a rarity in cases such as this.  *See, e.g.*, *id.* (refusing an enhancement beyond the guidelines because "the case did not involve any novel or particularly difficult questions.").  Furthermore, the Court does not consider Plaintiffs' questions regarding their exempt status to be novel.  Review of additional relevant *Johnson* factors further supports a refusal to enhance Mr. Zippin's hourly rate beyond the guidelines.  As to factor four, Plaintiffs admit that "it cannot be said that the Firm was unable to pursue other matters due to the acceptance of this case."  (ECF No. 46 at p. 9).  Regarding factor six, Plaintiffs' counsel was hired on a contingency basis, thereby putting Plaintiffs' counsel on notice of the risk of not recovering any fees or costs if they did not prevail at trial.  Regarding factor ten, the Court recognizes that "individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action."  *Matias Guerra*, 2019 WL 3927323, at*7 (other citation omitted).  However, Plaintiffs' counsel has "represented hundreds – if not thousands – of FLSA claimants in Federal and State Courts in Maryland . . ." and several other jurisdictions.  (ECF No. 46 at p. 9).  Such a history of representing plaintiffs in such cases weighs against finding this factor to warrant an enhancement above the guidelines' rates.  The concerns Plaintiffs raise regarding the lack of evidence, the costs incurred, claims of exemption, and Defendants' limited cashflow are

concerns—as Plaintiffs' counsel should know— often encountered in wage and hour claims. Furthermore, Plaintiff admits, and the Court agrees, that factor eleven does not warrant an adjustment to the lodestar amount in this case.  (ECF No. 46 at pp. 13–14).  Lastly, as to factor eight, Plaintiffs reached a settlement agreement for $45,000.00 in total.[7]  The Court recognizes this as a success, but it is not one that warrants an enhancement beyond the guidelines.  Therefore, as to Mr. Zippin, the Court, as it has done several times before, will award the maximum hourly rate as a reflection of Mr. Zippin's level of skill and experience: $475.00/hour.

As to Mr. Amster, the Court recognizes that his involvement with the case was minimal and that very little information regarding his level of skill and experience have been made available.  However, the Court does recognize that Mr. Zippin is a named partner of Plaintiffs' counsel's firm, has been barred since 2009, limits his legal practice almost exclusively to wage and overtime claims, and his requested hourly rate fits within the guidelines.  (ECF No. 46 at p. 10).  In consideration of the *Johnson* factors already considered during the Court's analysis of Mr. Zippin's hourly rate, the Court will award Mr. Amster an hourly rate of $350.00/hour.

Regarding Mr. Lyford Pike, the proposed hourly rate does not reflect the fact that he had only four years of experience when he began to work on this case.  Plaintiffs fail to provide an exact date for Mr. Lyford-Pike's admission to the bar.  Therefore, the Court will calculate the lodestar amount using an hourly rate of $225.00/hour for Mr. Lyford Pike's work throughout the duration of the case.  This is reflective of Mr. Lyford Pike's commendable level of skill evidenced by his ability to handle almost the entirety of this case until settlement discussions began.

---

[7] The Court recognizes that Plaintiffs Spriggs' and Beattie's overtime claims were estimated as totaling approximately $14,000.00 and $17,000.00, respectively, and without considering the statutory enhancements potentially applicable if Plaintiffs were to succeed at trial.  (ECF No. 46 at p. 12; ECF No. 51 at p. 11).  A total settlement recovery of $45,000.00 in light of Plaintiffs seeking approximately $31,000.00 in overtime claims indicates to this Court a successful pre-trial outcome for Plaintiffs.

Furthermore, as established by the guidelines, this amount is the upper limit for attorneys with less than five years of experience, and it is mid-level for attorneys with between five to eight years of experience.

### 3. Lodestar Calculation

The Court's final lodestar calculation is as follows:

(a) Roy Lyford-Pike: 78.20 hours X $225.00/hour = $17, 595.00

(b) Phillip Zippin: 14.20 hours X $475.00/hour = $6,745.00

(c) Michael Amster:  0.30 hours X $350.00/hour = $105.00

(d) Paralegals/Law Clerks: 18.10 hours X $150.00 = $2,715.00

(e) **Final Lodestar Amount: $27,160.00**

As to factor twelve concerning attorneys' fees awards in similar cases, the Court recognizes its calculated lodestar amount as conformable to other such cases decided before this Court.  *See Atkins v. Sunbelt Rentals, Inc.*, No. PWG-14-1717, 2016 WL 3647610, at *4 (D. Md. June 30, 2016) (listing cases and determining an award of $95,400 in fees was reasonable where plaintiff settled his FLSA claim for $30,000 after two-years of litigation but before trial commenced); *see also, e.g.*, *Ekeh v. Montgomery Cnty.*, No. JKS-12-2450, 2016 WL 3523685, at *6 (D. Md. June 28, 2016) (awarding $31,970.50 in attorneys' fees where plaintiff prevailed on two of three years-worth of overtime claims amounting to $7,344.00).

### B. Reductions to the Lodestar Amount

#### 1. Reductions to Lodestar Amount Based on Pursuit of Unsuccessful Claims

As already explained, Plaintiff Spriggs agreed to "put aside" her sexual discrimination and racial discrimination claims solely for the purpose of settlement.  Had the parties not achieved settlement, Plaintiff Spriggs was prepared to move forward with these claims.  Furthermore, Mr.

18

Zippin used his billing judgment to remove hours worked but unrelated to overtime wages. Therefore, the Court will not reduce the lodestar amount based on Plaintiffs' pursuit of unsuccessful claims.

### 2.   Reductions to Lodestar Amount Based on Plaintiffs' Degree of Success

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  While quantifying success is "challenging," courts nonetheless "*must* compare the amount of damages sought to the amount awarded.*"  Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 23 (4th Cir. 2019) (quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (emphasis added by *Randolph*)).  Despite this mandate, in FLSA and other civil rights cases, the Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages . . ." actually recovered.  *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)).  Such cases often involve "vulnerable plaintiffs" who "may be vindicating important rights that entitle them to relatively modest compensation[,]" *Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4 (D. Md. June 8, 2015), and a rule requiring proportionality "would 'seriously undermine Congress' purpose' and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system." *Salinas v. Comm. Interiors, Inc.*, No. 8:12-cv-1973-PWG, 2018 WL 2752553, at *3 (D. Md. June 8, 2018) (quoting *Rivera*, 477 U.S. at 576).  Situations regularly arise where the amount sought in fees is outsized in comparison to the recovery.  *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006).

Ultimately, the court must also ensure that a fee award does not "produce a windfall to attorneys." *Butler v. Directsat USA, LLC*, No. CV DKC-10-2747, 2016 WL 1077158, at *6 (D.

Md. Mar. 18, 2016).  In *Randolph*, the Fourth Circuit found that a trial court abused its discretion by *failing* to reduce the lodestar amount where settling plaintiffs "received only 38% of their claimed unpaid overtime wages," or "only 6% of the damages sought at the outset of litigation."  *Randolph*, 780 F. App'x at 24 (remanding with instructions for a 25% reduction).  Courts in this District have also reduced lodestar amounts in FLSA cases for similar reasons.  *See, e.g.*, *Sakala v. Milunga,* No. PWG-16-0790, 2018 WL 5724010, at *9–12 (D. Md. Oct. 31, 2018) (reducing the $91,804.17 lodestar amount by 20%, because the amount that the plaintiff recovered was "less than half" of what she originally sought in her wage and hour claims, and a "small fraction" of what she sought for an unrelated claim that she withdrew two weeks prior to trial); *Chapman*, 2011 WL 2651867, at *17–18 (reducing the lodestar amount by 25% because the two settling plaintiffs each sought $5,291.91 in damages under the FLSA but recovered "less than fifty percent and fifteen percent respectively"); *Almendarez v. J.T.T. Enters. Corp.,* No. JKS-06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (reducing the $84,058.00 lodestar amount by 25% because the jury found that four plaintiffs were properly compensated for overtime pay, and that of the three who were not, they were each entitled to only $1,600, $600, and $1,100, rendering their victory "close to purely technical").

Defendants argue that Plaintiffs achieved minimal success in this case.  To the extent Defendants make this argument in consideration of what they believe were "completely unsuccessful" sexual and racial discrimination claims, the Court has already dispelled any notion that these claims were abandoned or unsuccessful for purposes of this Court calculating attorneys' fees.  Regarding the amount Plaintiffs received for settlement—$25,000.00 for one Plaintiff and $20,000.00 for the other—the Court recognizes the success these amounts indicate for Plaintiffs.

Both Plaintiffs received significantly more than their calculated and anticipated overtime wages absent any potential statutory enhancement.

To the extent Defendants take issue with Plaintiffs requesting more in attorneys' fees than the amount for which the case was settled, the Court recognizes that its lodestar determination is significantly below the settlement amount.  Furthermore, as already acknowledged, there is no shortage of wages and hours cases in which attorneys' fees far exceed a plaintiff's recovery amount.  Considering the significant success of Plaintiffs' settlement, the Court declines to further reduce its calculated lodestar amount.   Accordingly, Plaintiffs are awarded $27,160.00 in attorneys' fees.

### C. Costs

In FLSA cases, courts are vested with discretion to determine which costs may be awarded. *Roy v. Cnty. of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998).  "Examples of types of costs that have been charged to losing defendants include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying."  *Almendarez*, 2010 WL 3385362, at *7 (other citation omitted).

Here, Plaintiff seeks the following costs: (1) $1,333.60 for the deposition of Sharon Merling, (2) $350.00 for the deposition cancellation fee of George Merling, and (3) $400.00 for the complaint filing fee.  Defendants take issue with the $350.00 fee incurred by Plaintiffs for canceling George Merling's deposition.  (ECF No. 51 at p. 10).  Plaintiffs argue that Defendants should view this cancelation fee as a gift in disguise since proceeding with Mr. Merling's deposition would have accumulated thousands of dollars more in attorneys' fees and deposition costs.  (ECF No. 52 at p. 4, n.4).

"A litigant may recover a court reporter's cancellation fee." *See, e.g.*, *Herrera v. Grand Sports Arena, LLC*, No. 17-cv-0452, 2018 WL 6511155, *6 (N.D. Ill. Dec. 11, 2018) (citing *Bianchi v. Law Office of Thomas Landis*, No. 10-60574-CIV, 2011 WL 1584179, at *4–5 (S.D. Fla. Apr. 26, 2011) (allowing the recovery of a cancellation fee)). "However, in cases both granting and denying requests for such fees, the courts considering such requests have reviewed the relevant invoices to determine whether to allow the costs." *Herrera*, 2018 WL 6511155, at *6 (citing *Bianchi*, 2011 WL 1584179, at *4–5 (allowing the recovery of the cancellation fee in question given it would have been incurred no matter when the deposition was cancelled); *Lasenbby v. State Farm Fire & Cas. Co.*, No. 2:13-cv-2338-JAD-VCF, 2015 WL 3505320, at *2 (D. Nev. June 2, 2015) (denying defendant's request for a late-cancellation fee after reviewing the invoice and determining the fee at issue was incurred due to the defendant's own delay). Here, Plaintiffs have not provided any documentation to support this requested cost. Furthermore, Plaintiffs admit that they committed a "late cancellation of Defendant Merling's deposition."[8] (ECF No. 52 at p.4, n.5). Although Plaintiffs believe Defendants should view the $350.00 late cancelation fee as a blessing in disguise considering the costs that would have been incurred had the deposition gone forward, the Court disagrees and declines to award this cost.

Therefore, the total costs awarded to Plaintiffs will be the sum of $1,333.60 (for Defendant Sharon Merling's deposition) and $400.00 (the complaint filing fee): $1,733.60.

---

[8] Plaintiffs incurred this $350.00 cost for the late cancellation of a deposition scheduled using "Precise Reporting Services." (ECF No. 46-1 at p. 12). However, Plaintiffs provide nothing more than the bare assertion that such a cost was incurred, i.e., Plaintiffs do not support this assertion with any documentation. The Court visited Precise Reporting Service's website, and the website provides, "We have a two-hour cancellation policy. This means if you call at least two hours before the job is scheduled to commence, there is no charge. If the confirmed job is cancelled within two hours, the first hour appearance fee will be billed to you." PRECISE REPORTING SERVICES, *FAQs, Scheduling (What is Your Cancellation Policy?)*, https://precisereportingservices.net/faqs/ (last visited February 3, 2023). The Court does not consider this statement on the FAQs section of the cited website to be definitive proof against the appropriateness of Plaintiffs' requested cost, nor does the Court even assume to know the details of Plaintiffs' agreement with Precise Reporting Services. However, the Court notes that the above-referenced language further supports the Court's denial of this cost request considering that Plaintiffs provided no documentation for it.

### III.     Conclusion

Accordingly, this Court enters an attorneys' fees award of $27,160.00, together with costs of $1,733.60.  A separate order shall follow.


Date: February 7, 2023                                       /s/
                                                 J. Mark Coulson
                                                 United States Magistrate Judge